Submitted on remand from the Oregon Supreme Court August 7, 2001, reversed and remanded May 29, 2002

## STATE OF OREGON,
*Appellant,*

*v.*

## STEVEN GLEN FUGATE,
*Respondent.*

### 96-0660-C; A96628

47 P3d 904

Hardy Myers, Attorney General, Virginia L. Linder, Solicitor General, and Kaye E. Sunderland, Assistant Attorney General, for appellant.

Sally L. Avera, Public Defender, and Anne Morrison, Deputy Public Defender, for respondent.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant was charged with driving under the influence of intoxicants. The trial court granted defendant's motion to suppress evidence of defendant's impairment on the ground that the arresting officer exceeded the permissible scope of an investigation authorized by ORS 810.410 during traffic stops. The state appealed, arguing that the officer lawfully obtained the evidence of defendant's impairment, and, even if he did not, the evidence remained admissible under ORS 136.432. We reversed and remanded on the ground that, even if the officer obtained the evidence in violation of ORS 810.410, the evidence was not subject to suppression under ORS 136.432. *State v. Fugate*, 154 Or App 643, 963 P2d 686, *on recons* 156 Or App 609, 969 P2d 395 (1998). The Supreme Court reversed on the ground that ORS 136.432 was enacted after the offense took place, and retroactive application of the statute to defendant would offend the *ex post facto* provision of the Oregon Constitution. *State v. Fugate*, 332 Or 195, 26 P3d 802 (2001). The court remanded to us to consider the state's argument that, in any event, the evidence was obtained lawfully. We conclude that the state is correct and reverse and remand.

The trial court found the following facts. Oregon State Police Officer Jeter stopped defendant's car when he noticed that it had no license plate light. He ran a records check and determined that the driving privileges of the registered owner of the vehicle had been suspended. Jeter asked for defendant's identification and then asked the three passengers in the vehicle for their identification as well. Upon receiving the identification, he ran a license check on all four individuals. He discovered that defendant's license had been suspended. He also learned that there was an outstanding warrant for the arrest of one of the passengers, Gill. As Jeter approached Gill, he noticed a pouch in the back seat of the car that he thought was a gun holster. He seized the pouch, opened it, and saw inside a spoon that contained white residue.

Jeter ordered everyone out of the car, including defendant. When defendant was out of the car, Jeter noticed

for the first time that his breath smelled of alcohol and that his eyes were red and watery. Jeter asked defendant to perform field sobriety tests and ultimately arrested defendant for driving under the influence of intoxicants.

At trial, defendant moved to suppress the evidence of his physical impairment on the ground that Jeter observed that evidence only because he exceeded the permissible scope of a traffic stop when he asked the passengers for their identification. The trial court agreed, reasoning that, because Jeter lacked reasonable suspicion that any of the passengers had committed a crime, he lacked authority to ask them for their identification. The court further reasoned that, because Jeter's unauthorized request for identification had triggered the sequence of events that led to Jeter's observation that defendant appeared intoxicated, that observation and the evidence that resulted from it were fruits of the poisonous tree.

The state appealed, arguing that, under ORS 136.432, the evidence was admissible even if obtained without statutory authority. As we have noted, the Supreme Court rejected that argument. The state also argued that, among other things, even if ORS 136.432 does not apply, the trial court erred in suppressing the evidence on the ground that Jeter lacked authority to question the passengers, because defendant cannot assert a violation of the rights of a passenger as a basis for the suppression of evidence against him. Defendant replies that he is not attempting to assert the violation of the rights of the passengers; rather, he is arguing that, by asking the passengers for their identification, Jeter unlawfully extended the duration of the stop without reasonable suspicion, which was a violation of *his* constitutional rights.

■■ The state is correct that defendant cannot complain about the violation of the rights of the passengers. *State v. Trevino/Ahumada*, 133 Or App 24, 27-28, 889 P2d 1317, *rev den* 321 Or 340 (1995). In *State v. Amaya*, 176 Or App 35, 44-47, 29 P3d 1177 (2001), however, we held that neither the federal nor the state constitution requires that questioning during a traffic stop be related to the grounds for the stop unless that questioning would have the effect of detaining a

defendant without reasonable suspicion of illegal activity. In this case, defendant argues not that the questioning of the passengers violated their rights, but that the questioning had the effect of detaining him—by extending the duration of the stop—without reasonable suspicion that he had engaged in criminal activity.

The state argues that, in any event, the duration of the stop was not unlawfully extended, because, although Jeter may not have had reasonable suspicion to ask the passengers for their identification at the time, under *State v. Dempster*, 248 Or 404, 408, 434 P2d 746 (1967), the discovery of an outstanding warrant for Gill, one of those passengers, "purged the taint of any prior illegality."

In *Dempster*, the Supreme Court held that the discovery of an arrest warrant will "purge * * * the taint" of a prior unlawful detention, and, as a result, a subsequent arrest based on the detention will not be fruit of the poisonous tree. *Id.* at 407-08; *see also State v. Angerbauer*, 140 Or App 77, 80, 914 P2d 12 (1996) (because discovery of arrest warrant purged the taint of prior unlawful detention, subsequent arrest was not fruit of the poisonous tree); *cf. State v. Taylor*, 151 Or App 687, 692, 950 P2d 930 (1997), *rev den* 327 Or 432 (1998) (*Dempster* does not apply when the outstanding warrant is not discovered until after the arrest). Thus, in this case, the state is correct that, even if the questioning of Gill was unlawful, Jeter's discovery of the outstanding warrant purged the taint of that questioning, and Jeter's subsequent arrest of defendant is not fruit of the poisonous tree.

Defendant concedes that, under *Dempster*, the discovery of the outstanding warrant purged the taint of any unlawful questioning of Gill. He nevertheless insists that the evidence of his intoxication must be suppressed, because the discovery of the warrant for Gill's arrest did not purge the taint as to the unlawful questioning of the *other* passengers. Defendant's argument is unavailing, however. The questioning of the other passengers did not lead to the discovery of the evidence of defendant's intoxication. It was the questioning of Gill that led to the discovery of the outstanding warrant for his arrest and, in turn, led to the discovery of the pouch containing white residue that caused Jeter to ask defendant to

step out of the car, at which point Jeter observed defendant's intoxicated condition.

Defendant argues that, even so, the evidence of the results of the field sobriety tests should be suppressed, because Jeter lacked probable cause to request him to submit to them. We decline to address that argument. Because the trial court concluded that the evidence of defendant's intoxication was fruit of the poisonous tree, it did not reach defendant's alternative argument and did not make findings concerning the facts relevant to that argument. The court may address that argument on remand. *See State v. Terhear/Groemmel*, 142 Or App 450, 459, 923 P2d 641 (1996) (remanding for additional findings where trial court did not reach alternative arguments).

Reversed and remanded.